UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2004 OCT 14  P 1:44

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| AT&T CORP.,<br>A New York corporation,<br><br>          Plaintiff,<br>          Counterclaim Defendant<br>vs.<br><br>WELCH FOODS INC.,<br>A COOPERATIVE,<br>A Michigan corporation,<br><br>          Defendant<br>          Counterclaim Plaintiff | )<br>):<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 04 11899 DPW

## ANSWER AND COUNTERCLAIM

Now comes Defendant, Welch Foods Inc., A Cooperative ("Welch's"), through its undersigned counsel and responds to the Complaint of AT&T Corp. ("AT&T"), as follows:

## JURISDICTION AND VENUE

1.      Welch's admits the allegations of paragraph 1 of the Complaint.

2.      Welch's admits the allegations of paragraph 2 of the Complaint, except denies that AT&T provided communication services to Welch's under tariff.

3.      Paragraph 3 of the Complaint states a conclusion of law to which no response by Welch's is required.

4.      Paragraph 4 of the Complaint states a conclusion of law to which no response by Welch's is required.  To the extent that there are factual allegations within paragraph 4 of the Complaint, Welch's denies said allegations.

5.    Paragraph 5 of the Complaint states a conclusion of law to which no response by Welch's is required. To the extent that there are factual allegations within paragraph 5 of the Complaint, Welch's denies said allegations.

## GENERAL ALLEGATIONS

6.    Welch's admits the allegations of paragraph 6 of the Complaint.

7.    Welch's admits the allegations of paragraph 7 of the Complaint.

8.    Welch's denies the allegations of paragraph 8 of the Complaint.

9.    Welch's denies the allegations of paragraph 9 of the Complaint.

10.    Welch's admits that Plaintiff made a demand upon it for $268,166.41 but denies that it owes such amount or any amount to AT&T.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

11.    In response to the allegations of paragraph 11 of the Complaint, Welch's restates and incorporates by reference its responses to the allegations of paragraphs 1 through 10 of the Complaint as if fully set forth herein.

12.    Welch's denies the allegations of paragraph 12 of the Complaint.

13.    Welch's denies the allegations of paragraph 13 of the Complaint.

14.    Welch's denies the allegations of paragraph 14 of the Complaint.

## SECOND CAUSE OF ACTION
### (Quantum Meruit/Unjust Enrichment)

15.    In response to the allegations of paragraph 15 of the Complaint, Welch's restates and incorporates by reference its responses to the allegations of paragraphs 1 through 14 of the Complaint as if fully set forth herein.

16.    Defendant admits the allegations of paragraph 16 of the Complaint.

17.    Defendant admits the allegations of paragraph 17 of the Complaint.

18.    Defendant admits the allegations of paragraph 18 of the Complaint.

19.    Defendant denies the allegations of paragraph 19 of the Complaint.

## AFFIRMATIVE DEFENSES

1.    AT&T is estopped from recovery in this action because it charged Welch's far in excess of the rates that it promised to charge.

2.    AT&T is estopped from recovery in this action because Welch's has paid AT&T more than the rates promised by AT&T.

3.    AT&T is estopped from recovery in this action because it has failed to provide credits for overpayments as promised by AT&T, which credits exceed the amount AT&T seeks to recover from Welch's.

4.    AT&T is estopped from recovery because of its unclean hands.

5.    AT&T cannot recover in this action because Welch's is entitled to an offset for overcharges by AT&T which exceed the amount AT&T seeks to recover from Welch's.

6.    AT&T cannot recover in this action because all or part of AT&T's claims are barred by the statute of limitations.

WHEREFORE, Welch's prays that AT&T's claims against it be dismissed, and that it be granted its costs of defense, including reasonable attorneys' fees.

## COUNTERCLAIM

1.  Plaintiff in counterclaim, Welch's, is a Michigan corporation with its principal place of business in Concord, Middlesex County, Massachusetts. Welch's is named defendant in the above-captioned matter.

2.  Defendant in counterclaim, AT&T, is a New York corporation with its principal place of business in Bedminster, New Jersey. AT&T is named plaintiff in the above-captioned matter.

3.  In fall, 2000, Welch's and AT&T's authorized sales representatives were in the process of renewing five telecommunication contracts due to expire by mid-2001, including on accounts 8001-814-9742, 8002-814-8152, 8002-297-9514, 8000-848-4927.

4.  During this renewal process, AT&T's sales representatives repeatedly promised to Welch's that new contracts would be delivered promptly at rates considerably lower than the expiring contract rates.

5.  AT&T's sales representatives told Welch's that AT&T was experiencing logistical difficulties in generating the contracts because of internal AT&T problems.

6.  By spring, 2001, AT&T delivered two renewal contracts which were executed by both parties. AT&T's sales representatives continued to promise and represent that the other contracts would be delivered promptly with rates considerably lower than the expiring contract rates.

7.  Relying on AT&T's promises and representations, as well as on AT&T's past delays, Welch's continued to accept AT&T services as the remaining three contracts were expiring.

8.      Despite the promises and representations of AT&T's sales representatives regarding the rates that AT&T would charge Welch's for its services, AT&T began to charge tariff-based rates that were much higher than the promised contract rates and higher than even the expiring contract rates.

9.      Throughout the remainder of 2001 and through 2002, Welch's continually complained to AT&T about the overcharges and AT&T's failure to deliver the contracts.

10.     In response to these complaints, AT&T's sales representatives repeatedly assured Welch's that billing irregularities were frequent and such overcharges would be adjusted retroactively.

11.     Initially, Welch's paid the full amount of AT&T's invoices on the three contracts, in reliance upon AT&T's repeated promises and representations that it would adjust the bills retroactively to reflect the competitive rates that it had promised, and because Welch's was accustomed to AT&T's previous history of adjusting its billing errors.

12.     After several months of unfulfilled promises and assurances, Welch's began to recalculate each monthly bill to pay at the preexisting contract rates, which were higher than the promised rates.

13.     After many apologies by AT&T and admissions by AT&T that it had seriously mishandled the situation, on October 9, 2002 AT&T advised Welch's of a $125,020.15 credit to address some of the service overcharges.

14.     In particular, AT&T made a "manual adjustment [to the claimed outstanding balance] according to the old contract," precisely what Welch's had been paying in the interim. Nonetheless, AT&T's billing department continued to charge at the higher tariff-based rates.

15.   On October 28, 2002, AT&T e-mailed Welch's, stating that it wanted to "discuss where we are in the process of getting Welch's back on contract and getting the credits due [Welch's]" for the continuing overcharges.

16.   In late 2002, AT&T finally sent Welch's the promised contracts, with rates as represented or lower, more than two years from the start of the renewal process.

17.   As late as August 2003, AT&T still was admitting to "credits you're [Welch's] owed."

18.   Welch's has paid AT&T in full at the old, expiring contract rates, which is more than the rates promised and represented by AT&T.

19.   Indeed, Welch's has paid AT&T more than the promised rates and had not received the promised retroactive adjustments for the months that Welch's paid the full invoice.

20.   At all times, Welch's disputed the claimed past due charges and repeatedly proposed meeting with AT&T officials to discuss the history, AT&T's promises and representations, Welch's good faith payments, and AT&T's erroneous charges but AT&T refused to do so.

21.   Instead, in 2003, AT&T began a campaign to illegitimately coerce Welch's to pay the overcharges, by inter alia:

a.   Repeatedly threatening to terminate all telecommunications services it provided to Welch's, even those under separate contract between AT&T and Welch's, with payments current, which services AT&T had no contract or legal right to terminate.

b.   Repeatedly threatening to terminate all telecommunications services it provided to Welch's, despite its repeated promises to rectify its overcharging, when AT&T

knew that Welch's continuing smooth business operation was dependent upon continuing telecommunication services and that switching telecommunications carriers was not feasible on short notice.

c.    Threatening to reverse the $125,020.15 credit by concocting after the fact a claimed Welch's promise to sign new contracts in return.

22.    Welch's repeatedly requested AT&T to review the correspondence and interview its sales personnel to determine the merits of Welch's position, but on information and belief AT&T never did so. AT&T's disregard of Welch's assertions and refusal to investigate in good faith Welch's position continued through August 2004.

## COUNT ONE
### (Misrepresentation)

23.    Welch's restates the allegations of paragraphs 1-22 of its Counterclaim and incorporates them by reference as if fully set forth herein.

24.    Welch's continued to utilize AT&T's telecommunications services based upon its reasonable reliance on AT&T's promises and representations that it would deliver contracts to Welch's at competitive rates.

25.    Despite AT&T's promises and representations, it continued to bill Welch's for its services at tariff-based rates, which exceeded not only competitive rates, but also the expiring contract rates.

26.    Welch's paid AT&T at more than the expiring contract rates, which were higher than the promised rates.

27.     As a result of its reasonable reliance on AT&T's promises, Welch's paid AT&T approximately $412,000 in excess of AT&T's promised rates, which amount Welch's is entitled to recover from AT&T.

## COUNT TWO
### (Breach of Contract)

28.     Welch's restates the allegations of paragraph 1-27 of its Counterclaim and incorporates them by reference as if fully set forth herein.

29.     AT&T agreed to provide telecommunications services to Welch's at rates far lower than it charged.

30.     AT&T agreed to adjust Welch's bills to reflect that it was providing services to Welch's at lower rates than it was charging.

31.     AT&T breached its agreement to adjust its bills to Welch's, instead charging Welch's and accepting payment from Welch's far in excess of its promised rates.

32.     AT&T's breach of its agreement with Welch's damaged Welch's in the approximate amount of $412,000.

## COUNT THREE
### (Unjust Enrichment)

33.    Welch's restates the allegations of paragraphs 1-32 of the Counterclaim and incorporates them by reference as if fully set forth herein.

34.    In addition to the amounts Welch's paid in excess of the promised contract rates, Welch's paid AT&T overcharges which AT&T failed to credit to Welch's account despite its repeated promises to do so.

35.    AT&T overcharged Welch's at least $70,910.64 for telecommunication services in connection with the contracts in issue, including:

    a.    $25,235.00 for late disconnect on equipment for the frame relay services;

    b.    $19,000 for equipment that was never purchased by Welch's in connection with the frame relay services;

    c.    $7,000.00 for data line charges before the data line was operational on the frame relay services;

    d.    $19,675.64 for late disconnect on voice T1 in connection with the Uniplan contract.

36.    AT&T has been unjustly enriched by these amounts, as well as the amounts Welch's paid to AT&T in excess of the rates that AT&T promised to deliver.


## COUNT FOUR
### (Unfair and Deceptive Trade Practices)

37.    Welch's restates the allegations of paragraph 1 through 36 of its Counterclaim and incorporates them by reference as if fully set forth herein.

38.    Welch's is headquartered in Massachusetts and its Office Administration function responsible for purchasing telecommunication services was located in Massachusetts at all

9

relevant times. AT&T's personnel primarily communicating with Welch's were located in Massachusetts. The conduct alleged herein occurred primarily and substantially in Massachusetts.

39.    AT&T's conduct constituted unfair and deceptive conduct in violation of M.G.L. c.93A, Sections 2 and 11, including, but not limited to:

a.    Repeatedly threatening termination of a valid contract and associated critical telecommunication services without legal authority in order to coerce payment of a legitimately disputed debt.

b.    Repeatedly threatening termination of critical telecommunication services over matters legitimately in dispute without any good faith inquiry into the bona fides of Welch's position.

c.    Repeatedly promising delivery of lower rate contracts in order to deter Welch's from switching to a lower priced competitor while at the same time charging Welch's exorbitant rates.

d.    Charging Welch's exorbitant rates despite repeated promises to contract at competitive rates.

e.    Falsely promising to retroactively adjust ongoing billings at exorbitant rates to competitive rates to induce Welch's to remain with AT&T.

WHEREFORE, Welch's prays that it be awarded its damages, multiple damages pursuant to M.G.L. ch. 93A, plus costs, interest and reasonable attorneys' fees, together with such other and further relief as this Court may deem just and proper.

Respectfully submitted,

William A. Worth
BBO #544086
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109-1024
Tel: (617) 456-8000
Fax: (617) 456-8100

Richard H. Alpert
BBO #016500
Welch Foods Inc., A Cooperative
575 Virginia Road
Concord MA 01742
Tel: (978) 371-3668
Fax: (978) 371-3860

## WELCH'S CLAIMS A JURY TRIAL ON ALL ISSUES SO TRIABLE

Date: October 14, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first-class mail, postage prepaid, on October 14, 2004.

William A. Worth

11